UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KARLYN EKLOF,

        Petitioner,

        v.

WILLIAM HOEFEL,

        Respondent.

Civil No. 04-1141-HA

OPINION AND ORDER

HAGGERTY, Chief Judge:

      Petitioner filed a petition for writ of habeas corpus under 28 U.S.C. § 2254 and subsequently was appointed counsel. After seeking and being granted opportunities to file two rounds of amended petitions, supplemental supporting memoranda, and a supplemental reply brief, this matter was taken under advisement. This court has determined that oral argument is unnecessary in this matter. For the following reasons, the petition is denied.

1 -- OPINION AND ORDER

Petitioner challenges her jury trial convictions for two counts of intentional murder, one count of aggravated murder, one count of aggravated felony murder, one count of assault, and one count of kidnapping. Her challenges include assertions that (1) the prosecution suppressed impeachment evidence; (2) her counsel performed ineffectively; (3) she is innocent of the aggravated felony murder and kidnapping convictions, and (4) her consecutive life sentences are unlawful.

Petitioner also requests an evidentiary hearing. Because this court concludes that an evidentiary hearing would be futile, that request is denied.

**BACKGROUND**

The following is a brief summary of relevant facts. Specific details will be examined as necessary within the analysis of the legal issues presented.

Petitioner met the murder victim James Salmu in December 1992 at a bar in Eugene, Oregon. A friendship ensued, and Salmu later allowed petitioner and her children to move in with him.

In early 1993 petitioner began a relationship with Jethro Tiner. Tiner traveled to Oregon to visit her and stayed with petitioner at Salmu's house. Around this time petitioner contacted Alven Hope, a friend, to buy a handgun. Petitioner and Tiner visited Hope and acquired a handgun for fifty dollars.

On March 21, 1993, a pizza party was held at Salmu's house. Hope attended the party, and John Distabile, a friend of petitioner's, participated by preparing the pizzas. As the party neared its conclusion, an argument ensued between petitioner, Tiner and Salmu. There was a physical altercation in which Tiner pinned Salmu to the floor and displayed the firearm that petitioner had acquired from Hope.

Petitioner asked Distabile to take her children for the night, because Salmu was about to be killed.  When Salmu attempted to escape out the front door, petitioner grabbed him and threw him back inside the house and shut the door.  Petitioner punched Salmu several times, causing his face to bleed profusely.  She displayed a hunting knife, possibly stabbed Salmu, and dragged him into a bathroom.  Tiner entered the bathroom and continued arguing with Salmu.  Petitioner went to the kitchen while Tiner shot Salmu twice.  Petitioner re-entered the bathroom and observed Tiner shoot Salmu in the chest.  Petitioner later described retrieving a knife from the kitchen and stabbing Salmu.  Tiner also fired a fourth bullet into the victim.

After the victim's death, Tiner and petitioner cut off three of the victim's fingers and placed a penny in his mouth, then placed the body in a sleeping bag and put the body into the trunk of petitioner's car.  They left Salmu's body against a rock on a steep incline near a logging road approximately fifty miles east of Springfield, Oregon.

Petitioner and Tiner later applied multiple coats of paint to the bathroom walls and laid new linoleum in the bathroom and carpet in the living room.  They abandoned Salmu's car in a parking lot and painted petitioner's car.

Petitioner and Tiner left Oregon and visited Tiner's brother, David, in Fresno, California, on March 27, 2003.  Petitioner and Tiner told David about the murder, describing how petitioner had stabbed Salmu and Tiner had shot him.

Petitioner was interviewed repeatedly by police detectives.  Many of these conversations were recorded and presented at her trial.  In April 1994, petitioner agreed to do four videotaped interviews with the detectives.  In these recordings, petitioner re-enacted the murder, admitted to punching Salmu and stabbing him.

Petitioner did not testify nor present any witnesses at her trial, but attempted to establish that there was insufficient evidence to establish criminal intent, and that she was acting in duress

3 -- OPINION AND ORDER

when she participated in the victim's murder. Petitioner was convicted of two counts of intentional murder, one count of aggravated intentional murder, one count of aggravated felony murder, one count of first degree assault, one count of second degree kidnapping, one count of unauthorized use of a motor vehicle, one count of felon in possession of a firearm, and one count of second degree abuse of a corpse.

After a sentencing hearing, the jury declined to recommend that petitioner receive the death penalty. The court then sentenced petitioner to two consecutive life sentences without the possibility of parole.

Petitioner appealed her convictions directly, asserting Oregon state law issues. The Oregon Court of Appeals affirmed petitioner's convictions without an opinion, and the Oregon Supreme Court denied review. In her petition for review to the Oregon Supreme Court, petitioner raised no federal constitutional claims.

After her direct appeal, petitioner sought post-conviction relief (PCR). The PCR trial court issued a written opinion denying relief that included specific factual findings and conclusions of law. Petitioner appealed this ruling, but then requested that the Court of Appeals remand her case so she could advance a claim brought under *Brady v. Maryland*, 373 U.S. 83 (1963). This request was denied. Petitioner subsequently filed an appellant's brief that asserted that her trial counsel performed ineffectively by failing to properly cross-examine one of the investigating officers, and that her consecutive "true-life" sentences were unlawful.

The Oregon Court of Appeals affirmed the PCR trial court's decision. Petitioner did not seek review of that decision in the Oregon Supreme Court.

**QUESTION PRESENTED**

4 -- OPINION AND ORDER

In her Second Amended Petition for Habeas Corpus relief, petitioner argues that her sentence is unconstitutional on several grounds. These grounds assert that: (1) the prosecution suppressed material exculpatory evidence pertaining to the crimes charged and regarding an impending prosecution of Alven Hope and the criminal conduct of, and possible prosecutorial negotiations with, John Distabile; (2) petitioner's trial counsel performed ineffectively by failing to object to improprieties during closing argument and failing to preserve these objections for appellate review; (3) petitioner is actually innocent of the aggravated felony murder and second degree kidnapping convictions, and (4) petitioner's consecutive life sentences are unlawful. Second Amended Petition for Writ of Habeas Corpus at 2-3.

## **STANDARDS**

A writ of habeas corpus shall not be granted pursuant to any claim adjudicated on the merits in state court unless the adjudication resulted in a decision that was: (1) contrary to, or involved an unreasonable application of, clearly established law; or (2) based on an unreasonable determination of the facts in light of the evidence presented in the state court. 28 U.S.C. § 2254(d)(1) and (2).

Further, "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A).

A state prisoner has exhausted all state remedies when the prisoner does not have the right under state law "to raise, by any available procedure, the question presented." *See* 28 U.S.C. § 2254(c). This exhaustion doctrine applies when "the state court has never been presented with an opportunity to consider a petitioner's claims and that opportunity may still be

available to the petitioner under state law." *Franklin v. Johnson*, 290 F.3d 1223, 1230 (9th Cir. 2002) (citing 28 U.S.C. § 2254(c)).

The exhaustion doctrine requires a state prisoner to "give the state courts an opportunity to act" on claims before they are presented to a federal court in a habeas petition. *O'Sullivan v. Boerckel,* 526 U.S. 838, 842 (1999). In other words, to exhaust her claims, petitioner had to give Oregon courts a "fair opportunity" to act on her federal claims before presenting them to the federal courts. *Castillo v. McFadden*, 399 F.3d 993, 998 (9th Cir. 2005) (citing *O'Sullivan*, 526 U.S. at 844-45; *Peterson v. Lampert*, 319 F.3d 1153, 1155-56, 1159 (9th Cir. 2003) (*en banc*)). Relatedly, the petitioner must have "fairly presented" her federal, constitutional issues before the state appellate courts. *Castillo*, 399 F.3d at 1000 (citation omitted).

"Exhaustion and procedural default are distinct concepts in the habeas context." *Franklin*, 290 F.3d at 1230 (citing *Francis v. Rison*, 894 F.2d 353, 355 (9th Cir. 1990)). "The two doctrines developed independently and on different grounds, apply in different situations, and lead to different consequences." *Franklin*, 290 F.3d at 1230.

The procedural bar doctrine "has its historical and theoretical basis in the 'adequate and independent state ground' doctrine." *Harris v. Reed*, 489 U.S. 255, 260 (1989) (citing *Wainwright v. Sykes*, 433 U.S. 72, 78-79 (1977)). The adequate and independent state ground doctrine provides that federal courts are precluded from considering "an issue of federal law on direct review from a judgment of a state court if that judgment rests on a state-law ground that is both independent of the merits of the federal claim and has an adequate basis for the court's decision." *Harris*, 489 U.S. at 260.

Federal courts can review procedurally defaulted claims only if the petitioner "can demonstrate cause for the default and actual prejudice as a result," or can demonstrate a miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

6 -- OPINION AND ORDER

Procedural default bars federal habeas review in cases in which the state court has declined to address a petitioner's federal claims because the petitioner failed to meet state procedural requirements. *Insyxiengmay v. Morgan*, 403 F.3d 657, 665-66 (9th Cir. 2005) (citing *McKenna v. McDaniel*, 65 F.3d 1483, 1488 (9th Cir.1995)).

As the Supreme Court explained in *Coleman*:

> In the habeas context, the application of the independent and adequate state ground doctrine is grounded in concerns of comity and federalism. Without the rule, a federal district court would be able to do in habeas what this Court could not do on direct review; habeas would offer state prisoners whose custody was supported by independent and adequate state grounds an end run around the limits of this Court's jurisdiction and a means to undermine the State's interest in enforcing its laws.

*Coleman*, 501 U.S. at 730-31; *see also Casey v. Moore*, 386 F.3d 896, 920 (9th Cir. 2004).

After the government pleads the existence of an independent and adequate state procedural ground as an affirmative defense, the burden to counter that defense shifts to the petitioner. The petitioner may satisfy this burden by asserting specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the rule. The burden then shifts back to the government, which bears the ultimate burden of proving the adequacy of the relied-upon ground. *King v. Lamarque*, 464 F.3d 963, 966-67 (9th Cir. 2006), citing *Bennett v. Mueller*, 322 F.3d 573, 585-86 (9th Cir. 2003).

In summary, "the procedural default rule barring consideration of a federal claim 'applies only when a state court has been presented with the federal claim,' but declined to reach the issue for procedural reasons, or 'if it is clear that the state court would hold the claim procedurally barred.'" *Franklin*, 290 F.3d at 1230-31, quoting *Harris*, 489 U.S. at 263 & n. 9.

## ANALYSIS

7  -- OPINION AND ORDER

The court has considered all of the briefs submitted by petitioner, the responses filed by the government, and the record of this case. As noted, this court concludes that an evidentiary hearing in this matter is unnecessary.

### 1. Petitioner's claims are procedurally defaulted

This court concludes that petitioner's claims were not "fairly presented" to Oregon's Supreme Court. No federal claims were presented in the petition for review to Oregon's Supreme Court that was filed during petitioner's direct appeal proceedings. Petitioner also failed to assert federal claims in her PCR appeal to the Oregon Court of Appeals. Even if petitioner's argument is accepted that she was unfairly deprived of developing federal claims in her PCR appeal, there is no dispute that she failed to present *any* petition to the Oregon Supreme Court seeking review of her PCR disposition.

Similarly, petitioner's argument that her trial counsel performed ineffectively by failing to object to comments uttered by the prosecution during closing arguments was never presented in petitioner's PCR petition. Accordingly, this claim – the merits of which are discussed below – is also procedurally defaulted.

### 2. No grounds for excusing procedural default

#### a. No actual prejudice

Petitioner asserts that the default of her federal claims should be excused. A petitioner can overcome procedural default and obtain federal review of the merits of his or her claims either by making an "adequate showing of cause and prejudice," *Strickler v. Greene*, 527 U.S. 263, 282 (1999), or by demonstrating evidence of actual innocence sufficient to bring the petitioner within a narrow class of cases that implicate a fundamental miscarriage of justice. *Smith v. Baldwin*, 466 F.3d 805, 812 (9th Cir. 2006) (some citations and internal quotation marks

omitted).  Petitioner advances both as grounds for excusing default, and they are addressed in turn.

Procedural default may be excused if a petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law. . . ."  *Hanson v. Mahoney*, 433 F.3d 1107, 1114 (9th Cir. 2006) (citing *Boyd v. Thompson*, 147 F.3d 1124, 1126 (9th Cir. 1998) and quoting *Coleman*, 501 U.S. at 750)).  This analysis begins with an examination of petitioner's failure to demonstrate actual prejudice.

"Actual prejudice" is more than the mere possibility of prejudice, but that the errors worked to the petitioner's "actual and substantial disadvantage."  *United States v. Frady*, 456 U.S. 152, 170 (1982) (alleged errors in jury instructions must have gone beyond creating a possibility of prejudice, but must have infected his entire trial with error of constitutional dimensions).

Petitioner's requirement to prove prejudice requires a showing that there is a reasonable probability that the result of the trial would have been different had the alleged federal violations not occurred.  *Strickler*, 527 U.S. at 289 (quotations omitted).  The adjective "reasonable" is key; at issue is not whether the petitioner would more likely than not have received a different verdict, but whether in the absence of the alleged errors the petitioner would have received a fair trial, understood as a trial resulting in a verdict worthy of confidence.  *Id*. at 289-90 (citation and internal quotations omitted).

Petitioner contends that prejudice is demonstrated because there is a reasonable probability that the result of her trial would have been different if the prosecution had produced information indicating (1) that Hope was once viewed as a possible suspect of Salmu's murder, was being prosecuted for unrelated crimes, and negotiated a reduced sentence for those unrelated charges in exchange for testifying against petitioner; and (2) that the prosecution may have had

9  -- OPINION AND ORDER

an immunity agreement with witness John Distabile. Petitioner shows no reasonable probability that the result of her criminal trial would have been different if a jury had considered this information.

Petitioner provided repeated videotaped confessions from which the jury learned that she and Tiner purchased a gun from Hope and actively participated in the beating, recapturing and eventual murder of the victim, and in disposing of the victim's body and eliminating incriminating evidence. Hope's and Distabile's testimony corroborated petitioner's admissions. The alleged deprivation of an opportunity to cast some doubt on the credibility of that corroborating testimony fails to give rise to a reasonable probability that the trial result would have been different had that opportunity been realized.

Specifically, the ballistics report that petitioner asserts as one aspect of the allegedly wrongfully withheld evidence is accurately viewed as bolstering the state's case against petitioner. No evidence was presented that suggested that Hope was present when Salmu was murdered. There is no meaningful dispute that petitioner and Tiner obtained a weapon from Hope, and the proposed admission at trial of a report linking the murder weapon to a weapon once possessed by Hope fails to give rise to any possibility that the trial's result would have been different.

Moreover, there is no compelling evidence that Hope was offered a deal for testifying against petitioner, or that his testimony was significant. Hope's relevant testimony pertained to the gun transaction and his presence at the pizza party before Salmu's death. That testimony was also confirmed by other witnesses or petitioner.

Similarly, petitioner's assumption that Distabile was given a secret immunity agreement is not proven, and even if Distabile's somewhat limited testimony were wholly discredited, petitioner's trial result would likely have been the same.

10 -- OPINION AND ORDER

### b.  No cause

Even assuming that petitioner could somehow establish actual prejudice as a result of the alleged violation of federal law, she cannot demonstrate cause. The "cause" relied upon by the petitioner must be external to the petitioner. *Moormann v. Schriro*, 426 F.3d 1044, 1058 (9th Cir. 2005) (citing *Coleman*, 501 U.S. at 753). "Attorney ignorance or inadvertence is not cause, but attorney error rising to the level of an independent constitutional violation (in the form of ineffective assistance of counsel) does constitute cause." *Id.*, (citing *Coleman*, 501 U.S. at 753-54).

Petitioner acknowledges that her *Brady* claims are procedurally defaulted, but argues that "there is cause which excuses the default of these claims." Reply at 8. Petitioner contends that the "state's trial-level suppression of critical impeachment evidence" and the state's "continuing denial of its existence throughout post-conviction proceedings" should constitute cause which excuses the default. *Id.* (*see also* Supplemental Memorandum at 19 (state's concealment of *Brady* material before during and after trial, as well as throughout her post-conviction case constitutes an objective factor external to the defense).

However, even assuming without deciding that the state either deliberately or unintentionally suppressed or denied the existence of "critical impeachment evidence," such conduct fails to constitute cause justifying petitioner's failure to present *Brady* claims to the Oregon Supreme Court. Even if evidence supporting those claims was unavailable until co-defendant Tiner went to trial (*see* Supplemental Memorandum at 3-9), petitioner testified at Tiner's trial on February 17, 2000. Petitioner's PCR trial began on May 4, 2001, and she was free to amend her petition to include *Brady* claims at that time. She was also free to petition the Oregon Supreme Court for review during her PCR proceedings, as well. If access to the relevant *Brady* material did not occur until after her PCR trial concluded, she was free to file a successive

11 -- OPINION AND ORDER

PCR petition that asked the court to consider her *Brady* claims on the grounds that they could not have been raised earlier. Nothing the prosecution, or anyone else, did caused petitioner to fail to petition the Oregon Supreme Court for review.

    c.  **No actual innocence**

  Petitioner's argument that her procedural defaults should be excused under the miscarriage of justice/actual innocence exception because she is innocent of her aggravated felony murder and kidnapping charges is also rejected. A petitioner's procedural default on constitutional claims will be excused if the petitioner can "demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. Such a miscarriage occurs such as "when a 'constitutional violation has probably resulted in the conviction of one who is actually innocent' of the offense that is the subject of the barred claim." *Smith*, 466 F.3d at 812 (quoting *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

  The Supreme Court has described this showing of actual innocence as a gateway that allows the court to consider otherwise procedurally defaulted claims of constitutional error. *See Schlup v. Delo*, 513 U.S. 298, at 314-15 (1995) (citations omitted). "In the usual case the presumed guilt of a prisoner convicted in state court counsels against federal review of defaulted claims," but a petition "supported by a convincing *Schlup* gateway showing 'raise[s] sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial without the assurance that that trial was untainted by constitutional error'; hence, 'a review of the merits of the constitutional claims' is justified." *House v. Bell*, __ U.S.__, 126 S. Ct. 2064, 2077 (2006) (quoting *Schlup*, 513 U.S. at 317).

  "The court's function is not to make an independent factual determination about what likely occurred, but rather to assess the likely impact of the evidence on reasonable jurors," and "it bears repeating that the *Schlup* standard is demanding and permits review only in the

12  -- OPINION AND ORDER

extraordinary case." *House*, 126 S. Ct. at 2077 (citations and quotation omitted). "A petitioner's burden at the gateway stage is to demonstrate that more likely than not, in light of the new evidence . . . any reasonable juror would have reasonable doubt." *Id*.

Petitioner's arguments fail to establish that any reasonable juror would have reasonable doubt as to petitioner's guilt. She contends that she is actually innocent of the kidnapping element of her aggravated felony murder conviction and of her second degree kidnapping conviction. Supporting Memorandum at 41-47. To prove this, she relies on two recent Oregon cases in which the statutory definitions for kidnapping were refined. *See State v. Wolleat*, 111 P.3d 1131 (Or. 2005); *State v. Sparklin*, 125 P.3d 1269 (Or. App. 2006).

As summarized in the Oregon Court of Appeals' decision in *Sparklin*, the Oregon Supreme Court's analysis of the legislative history of the kidnapping statute's phrase *"intent to interfere substantially with another's personal liberty"* revealed that "the legislature did not intend the crime of kidnapping to encompass room-to-room movements." *Sparklin*, 125 P.3d at 1270 n.2 (citing *Wolleat*, 111 P.3d at 1134-35).

Even assuming that *Wolleat* and *Sparklin* – which were decided more than ten years after petitioner's convictions – are relevant, this court finds that both decisions are distinguishable. The facts presented here establish that petitioner substantially interfered with the victim's liberty by seizing him as he was trying to escape by leaving the house, and she closed her outside door and then dragged the victim to her bathroom. The victim was prevented from escaping from this bathroom until he was killed.

Under these facts, the Oregon courts' decisions in *Sparklin* and *Wolleat* fail to suggest plaintiff's actual innocence of her kidnapping and associated aggravated felony murder charges, and therefore, her procedural defaults are not excused.

       **3.**      **Alternatively, petitioner's arguments lack merit**

Alternatively, this court also concludes that petitioner's claims – even if they were not procedurally defaulted – lack merit. The information that petitioner alleges that the prosecution wrongfully withheld from her falls short of being construed as material or prejudicial to her. As noted above, there is no compelling evidence that Hope was offered a deal for testifying against petitioner, or that his testimony was significant. His testimony – even if discredited – was confirmed by other witnesses or petitioner. Petitioner's assumption that Distabile was given a secret immunity agreement is not proven, and even if Distabile's somewhat limited testimony were wholly discredited, petitioner's trial result would likely have been the same. Her guilt was established independently of any doubt that petitioner might have cast upon the evidence presented by Hope or Distabile, and the verdict in her prosecution is worthy of confidence.

Petitioner's procedurally defaulted ineffective assistance of counsel claim also lacks merit. To prevail on a claim of ineffective assistance of counsel, a petitioner must prove both incompetence of counsel and prejudice to petitioner's case. The petitioner bears the burden of showing that counsel's performance was unreasonable in light of the prevailing professional norms and that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The reasonableness of counsel's performance is judged based on the facts of the particular case as they were known at the time of counsel's conduct. *Bell v. Cone*, 535 U.S. 685, 698 (2002).

Failure to make the required showing on either the "incompetence" prong or the "prejudice" prong "defeats the ineffectiveness claim." *Strickland*, 466 U.S. at 700.

To establish ineffective assistance of counsel, petitioner must establish both deficient performance by counsel and that the deficiency prejudiced the petitioner. *Williams v. Calderon*, 52 F.3d 1465, 1469 (9th Cir. 1995). There is no need to evaluate the counsel's performance if

14  -- OPINION AND ORDER

the petitioner fails to show that prejudice resulted from the counsel's alleged errors. *Strickland*, 466 U.S. at 697.

If prejudice from the alleged errors is shown, petitioner must overcome a strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *United States v. Palomba*, 31 F.3d 1456, 1460 (9th Cir. 1994) (quoting *Strickland*, 466 U.S. at 690). "The essence of an ineffective assistance of counsel claim is that counsel's conduct so undermined the proper functioning of the adversarial process" that the results of the subsequent trial or plea "cannot be relied on as having produced a just result." *Williams*, 52 F.3d at 1469 (internal quotations omitted).

To establish deficient performance, a petitioner must first demonstrate that counsel not merely committed errors, but also performed outside the "wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. A petitioner must show that counsel's representation failed to meet an objective standard of reasonableness. *Id*. at 688. To establish prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Williams*, 52 F.3d at 1469 (quoting *Strickland*, 466 U.S. at 694).

Specifically, a petitioner must show that counsel committed errors that a reasonable, competent lawyer, acting as a diligent and conscientious advocate, would not make, and that prejudice resulted. *Katz v. United States*, 920 F.2d 610 (9th Cir. 1990); *Tinsley v. Borg*, 895 F.2d 520 (9th Cir. 1990) (citing *Strickland*). The test is whether the assistance was reasonably effective under the circumstances, and judicial scrutiny must be highly deferential, with the court indulging a strong presumption that the attorney's conduct falls within the wide range of reasonable professional assistance. *Id*.

15  -- OPINION AND ORDER

In this case, petitioner bases her assertion of ineffective assistance of counsel upon comments the prosecution made during closing arguments to which her counsel failed to object. However, the jury was instructed properly regarding the weight to assign to statements made by counsel, and there is no reasonable showing that but for these unchallenged comments, petitioner's trial would have had a different result.

Petitioner's freestanding "actual innocence" argument also fails. Her efforts to invoke "actual innocence" as a basis for excusing her procedural defaults were unavailing. The analysis undertaken in that analysis is even more applicable here.

Similarly, petitioner's argument that her consecutive life sentences are unlawful under the rule announced in *State v. Barrett*, 10 P.3d 901 (Or. 2000), is rejected. The state acknowledges that petitioner's analysis of *Barrett* is correct in theory, but points out that petitioner was sentenced properly under the law applicable at the time of her sentencing. Petitioner also procedurally defaulted this claim, and does not dispute that even if her argument were meritorious, she would nevertheless still be serving a "true life" sentence.

Finally, with respect to petitioner's request for an evidentiary hearing, not only was she afforded a full PCR trial in which to develop evidence of her innocence, but she has also "failed to show what . . . an evidentiary hearing might reveal of material import." *Gandarela v. Johnson*, 286 F.3d 1080, 1087 (9th Cir. 2002). Accordingly, the court declines to hold an evidentiary hearing. *See Caratachea v. Hall*, 2007 WL 2746937, at *4 (D. Or. September 20, 2007) (requiring a petitioner seeking an evidentiary hearing to allege facts which, if proven, would entitle petitioner to relief, and also show a denial of an opportunity to develop those facts in state court) (citing *Belmontes v. Woodford*, 335 F.3d 1024, 1053-54 (9th Cir. 2003)).

**<u>CONCLUSION</u>**

16 -- OPINION AND ORDER

For the reasons provided above, the court denies the Second Amended Petition for Writ of Habeas Corpus [40] filed by Karlyn Eklof under 28 U.S.C. § 2254.  This action is dismissed with prejudice.  Any other motions are denied as moot.

IT IS SO ORDERED.

DATED this   7   day of January, 2008.


                                                     /s/ Ancer L. Haggerty
                                                       Ancer L. Haggerty
                                              United States District Judge